UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BROADCAST MUSIC, INC, et al., | CASE NO. 5:12CV1024 |
| Plaintiffs, | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | |
| | MEMORANDUM OPINION AND ORDER |
| MEADOWLAKE, LTD, et al., | |
| Defendants. | |

This matter is before the Court on the motion for summary judgment filed on behalf of Plaintiffs, Broadcast Music, Inc. ("BMI"), Barn-Storm Music, Inc., Belkin Music, Concord Music Group, Inc., Dandelion Music Co., EMI Virgin Songs, Inc., Elijah Blue Music, Forrest Richard Betts Music, G. DeGraw Music, Inc., Ronder Music International, Inc., Songs of Universal, Inc., Unichappell Music, Inc., and Warner-Tamerlane Publishing Corp. on May 29, 2013. ECF Dkt. #47. Defendant, Roy E. Barr, acting *pro se*, filed a motion to deny Plaintiff's motion for summary judgment and Defendant's motion to dismiss the above-captioned case on June 7, 2013. ECF Dkt. #50. No reply brief was filed.

For the following reasons, Defendant's motion is denied and Plaintiff's motion for summary judgment is granted.

**I.   MOTION FOR SUMMARY JUDGMENT**

    **A.   STANDARD OF REVIEW**

Summary judgment should be granted "where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions, and affidavits in the

record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Johnson v. Karnes*, 398 F.3d 868, 870-873 (6th Cir. 2005). The Court must decide, "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986).

A party seeking summary judgment bears the initial burden and must inform the court of the basis for its motion. *Celotex*, 477 U.S. at 323. Further, the moving party must identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" which demonstrate the absence of a genuine issue of material fact. *Id.* The moving party must make a showing that no reasonable jury could find other than for the moving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

Once the moving party satisfies its burden, the nonmoving party must demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.,* 8 F.3d 335, 340 (6th Cir. 1993); see *Matisushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must present "some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy St. Corp.,* 822 F.2d at 1435, see *First Nat'l Bank of Ariz. v. Cities Servs. Co.,* 391 U.S. 253, 288-290 (1968).

**B.** **FACTS AND PROCEDURAL HISTORY**

The following facts are undisputed for the purposes of the motion for summary judgment. BMI is a "performing rights society" under 17 U.S.C. § 101. As such, BMI has been granted the right to license the public performance rights in approximately 7.5 million copyrighted musical compositions, including those alleged to have been infringed. ECF Dkt. #1, Complaint, ¶3. The other plaintiffs are the copyright owners of the various musical works that are the topic of this lawsuit. *Id.* at ¶5-16.

Through agreements with copyright owners such as music publishing companies and composers, BMI acquires non-exclusive public performance rights. ECF Dkt. #47-1, Declaration of Hope Lloyd, BMI's Assistant Vice President, Legal, ¶2. BMI has acquired such rights from each of the Plaintiffs in this action. *Id.* BMI, in turn, grants to music users, such as owners of restaurants and nightclubs, the right to publically perform any of the works in BMI's repertoire by means of "blanket license agreements." *Id.* These agreements have been recognized as the most practical means to exploit owner's copyrights. See, *Broadcast Music, Inc., v. Columbia Broadcasting System, Inc.,* 441 U.S. 1 (1979); *Broadcast Music, Inc. v. Moor-Law, Inc.*, 484 F. Supp. 357 (D. Del. 1980), *Broadcast Music, Inc. v. Moor-Law Inc.*, 527 F. Supp. 758 (D. Del. 1981), aff'd without publishing opinion, 691 F. 2d 491 (3rd Cir. 1982).

BMI operates as a non-profit making music performing rights organization. It distributes all of its income, after deducting operating expenses and reasonable reserves, to its affiliated songwriters and music publishers, which include the Plaintiffs in this action. Lloyd Decl., ¶3.

The Complaint names three defendants: Meadowlake Ltd., Roy E. Barr, and his son, Philip R. Barr. Meadowlake Ltd. is a limited liability company ("LLC") registered with the Office of the Secretary of the State of Ohio.[1] The individual defendants are members of the LLC. On March 15, 2013, Meadowlake Ltd. filed a petition for relief pursuant to Chapter 7 of the U.S. Code. Dkt. #41. On April 5, 2013, Philip R. Barr filed a petition for relief pursuant to Chapter 7 of the U.S. Code. Dkt. #44. As a consequence, Plaintiffs seek summary judgment solely against Defendant, Roy E. Barr (herein "Defendant"), the only defendant in the case to whom the automatic stay provision of the Bankruptcy Code does not apply.

At the time of the Complaint, Meadowlake Ltd. operated and maintained an establishment known as Rafters Bar & Grill, located at 1211 39th Street NE, Canton, Ohio 44714-1215 ("Establishment" or "Rafters Bar & Grill"). ECF Dkt. #32-1, First Set of Requests for Admissions ("Req. for Adm."), No. 1. Meadowlake Ltd. had the right and ability to direct and control the activities of Rafters Bar & Grill, and had a direct financial interest in the Establishment on the night of December 23, 2011. Req. for Adm., Nos. 2-3. Defendant has an ownership interest of 95% in Meadowlake Ltd. ECF Dkt. #32-2, First Set of Interrogatories ("Interrogatories"), Nos. 1-2. Philip R. Barr had been the owner of the remaining 5% interest. *Id.*

Prior to October 2008, BMI learned that Rafters Bar & Grill was offering musical entertainment without a license from BMI and without obtaining permission from the copyright owners whose music was being publically performed. ECF Dkt. #47-11, Declaration of Lawrence E. Stevens, Assistant Vice President, General Licensing, ¶3. On October 24, 2008, BMI sent a letter informing the Establishment that a license was required, and that BMI represented hundreds of

---

[1] Meadowlake Ltd. filed for dissolution as a LLC with the Ohio Secretary of State on March 18, 2013. Dissolution/Limited Liability Company, Doc. Id. 201307900174.

thousands of artists and had the right to license several million musical compositions. There was no response from Rafters Bar & Grill. *Id.* BMI issued no license to Rafters Bar & Grill, and had no information or belief that any of the owners of the copyrighted material had done so either. *Id*. at ¶4.

Between November 2008 and December 2011, BMI sent additional letters to Rafters Bar & Grill, including instructions to cease public performances of BMI-licensed music. *Id.* at ¶5-6. BMI's records indicate that BMI licensing personnel telephoned Rafters Bar & Grill on twenty-nine occasions, and spoke to persons associated with the Establishment's operations on a number of those calls. *Id.* at ¶8. Additionally, BMI sent a representative to Rafters Bar & Grill on December 23, 2011, and the representative recorded nine compositions allegedly performed, and later identified. *Id*. at ¶10-11; See also ECF Dkt. #47-12, Certified Infringement Reports, pp. 1-10. Defendant claims that he received no correspondence from BMI on behalf of Meadowlake Ltd., except those letters that were produced as part of Defendant's response to Plaintiff's request for the Production of Documents. ECF Dkt. #32-4, Letter of Faith R. Dylewski, Former Counsel, pp. 3-4 ("Dylewski letter").

Defendant maintains that he had been retired from Meadowlake Ltd. for several years, his involvement was limited to approval of expenditures relating to inspection of the irrigation systems on the golf course in the summer, he winters in the Southern United States and is not involved in day-to-day operations of Rafters Bar & Grill.. Interrogatories, No. 5; Dylewski Letter. Defendant further argues that he was retired at all times relevant to the Complaint, he did not take an active role in hiring any bands or musicians, and that he was not present at Rafters Bar & Grill during the period of the alleged copyright infringements. ECF Dkt. #50, Motion to Deny Plaintiff's Motion, ¶2-5. As a consequence, Defendant maintains that he did not have the right and ability to direct and

control or supervise the persons employed at Rafters Bar & Grill, and that he did not have a direct financial interest in the Establishment. Req. for Adm., No. 9-11. Plaintiffs do not dispute the facts asserted by Defendant, but, instead, argue that Defendant's majority ownership of the infringing company constitutes sufficient evidence to establish liability under the Copyright Act.

### C. LAW AND ANALYSIS

The Copyright Act provides the owner of a copyright work with the exclusive right to perform, and authorize others to perform, the copyrighted work. 17 U.S.C. §106(4). Any person who violates this exclusive right is an infringer. 17 U.S.C. §501(a).

Although the Sixth Circuit has not addressed the issue, almost every other circuit court in the country has adopted a two-prong test to determine whether a corporate officer is jointly and severally liable with the corporation for copyright infringement. *Famous Music Corp. v. Bay State Harness Horse Racing & Breeding Ass'n*, 554 F.2d 1213 (1st Cir. 1977); *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304 (2nd Cir. 1963); *Nelson-Salabes, Inc. v. Morningside Development, LLC*, 284 F.3d 505 (4th Cir. 2002); *RCA/Ariola Internat'l, Inc. v. Thomas & Grayston Co.*, 845 F.2d 773 (8th Cir. 1988); *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001). The prerequisites for vicarious liability are: (1) the officer has the right and ability to supervise the infringing activity, and (2) the officer has a direct financial interest in such activities. *Jobete Music Co., Inc. v. Johnson Communications, Inc.*, 285 F.Supp.2d 1077, 1083 (S.D. Ohio 2003).

Courts throughout the Sixth Circuit have adopted this two-prong test. *Superhype Pub., Inc. v. Vasiliou*, 838 F. Supp. 1220, 1225 (S.D. Ohio 1993); *All Nations Music v. Christian Family Network*, 989 F. Supp. 863 (W.D. Mich. 1997); *Mallven Music v. 2001 VIP of Lexington, Inc.*, 1986 WL 10704 (E.D. Ky. 1986); *Rodgers v. Quests, Inc.*, 1981 WL 1391 (N.D. Ohio 1981). In fact, this

Court has applied the two-prong test in past cases that are legion to the case at bar. See, *Broadcast Music, Inc. v. Leyland Co., LLC*, No. 5:11CV2264, 2012 WL 5879838, at *6 (N.D. Ohio 2012).

Under this standard, liability for copyright infringement is not limited to individuals who directly engage in infringing activity, but also to individuals who have the right to supervise the infringing activity and have a financial interest in the exploitation of copyrighted materials. *Jobete Music Co.* at 1083.

For instance, this Court has held that a direct financial interest and the *right and ability* to supervise the infringing activity makes the defendant liable. *Warner Bros., Inc. v. Lobster Pot, Inc.*, 582 F. Supp. 478, 484 (N.D. Ohio 1984) (emphasis added). In *Warner Bros.*, the plaintiff alleged that the defendant, a restaurant, hosted musical performances of ten of the company's copyrighted musical compositions. *Id.* at 480. The Court wrote, "The question of whether the defendant had the right and ability to control the infringing activity is an issue of law." *Id.* at 484. In *Warner Bros.*, this Court found that the defendant had both a direct financial interest in the infringing activity and the right and ability to supervise the infringing activity, and thus was personally liable. *Id.*

District courts in Ohio have further held that members of LLCs are subject to liability for copyright infringement, and, like corporate officers, are analyzed under the same two-prong standard. In *Broadcast Music, Inc., v. DK 547, LLC*, No. 2:11-CV-1064, 2013 WL 1615569, at *1 (S.D. Ohio 2013), a case strikingly similar to the case at bar, BMI alleged that defendants, DK 547, LLC and Kuzmanovski, the owner of DK 547, LLC, committed nine counts of copyright infringement on BMI's copyrighted musical compositions. Kuzmanovski argued that he did not have direct control over the activities or the ability to supervise his employees. Applying the two-prong standard, the Court found that Kuzmanovski was vicariously liable for the infringement of plaintiffs'

copyrights. *Id.* at *5. The Court permanently enjoined both defendants from publically performing BMI's copyrighted music, and awarded BMI both statutory damages and court costs to be paid by DK 547, LLC and Kuzmanovski, due to his position as the owner of the LLC. *Id.* at *8.

Here, Defendant denies that he operated and maintained Rafters Bar & Grill, that he had the right and ability to direct and control the activities of the Establishment, that he had the right and ability to supervise the persons employed there, and that he had a direct financial interest in the business. Req. for Adm., Nos. 8-11. He further argues that he received no income from the Establishment. Interrogatories, No. 5. Defendant's responses to inquiries regarding this apparent discrepancy consist of claims that Defendant was retired, had little to do with Meadowlake Ltd., took long vacations over winters, and left the day-to-day supervision to Philip R. Barr and other managers.

However, this Court has held that the fact that persons other than the defendant manage an establishment on a day-to-day basis does not relieve him of liability. See, e.g. *Warner Bros.*, 582 F. Supp. at 483. The test does not require active supervision. *Id.* See also, *Boz Scaggs Music v. KND Corp.*, 491 F. Supp. 908 (D. Conn. 1980); *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159 (2nd Cir. 1971); *Lottie Joplin Thomas Trust v. Crown Publishers, Inc.*, 456 F. Supp. 531 (S.D. NY 1977). Thus, the fact that Defendant was retired, took little personal interest in managing Rafters Bar & Grill, took long vacations, and entrusted day-to-day operations to others is irrelevant under the Copyright Act.

Furthermore, the fact that Defendant did not personally contract with the bands performing the infringing music is also irrelevant. In *Superhype Pub.*, 838 F. Supp. 1220 (S.D. Ohio 1993). the defendant argued that musical performances were unapproved acts of agents, beyond the scope of

8

their employment. *Id.* at 1224.  In *Superhype Pub.*, much like the case at bar, the defendant's son contracted the bands to perform. *Id.* Applying the two-prong vicarious liability test, the Court stated that, in copyright cases, neither knowledge of, nor specific consent with regard to infringement is absolutely necessary for personal liability. *Id.* The Defendant cannot escape liability for copyright infringement by looking the other way. *Id.*

Likewise, in *Sailor Music v. IML Corp.*, the Court found that the defendants, a husband and wife, were personally liable for the claimed copyright infringements because they, as the owners of IML, derived financial benefit from the infringing activities that occurred at their nightclub. *Sailor Music*, 867 F. Supp. 565, 569 (E.D. Mich. 1994). The Court found that the husband, although a more passive actor in the management of the nightclub, was liable for the infringement because he was a co-owner. *Id.*

Having considered Defendant's arguments and the relevant case law, the Court finds that even though Defendant had limited involvement in the management of Rafters Bar & Grill, he nonetheless had the ability to control the infringing activity. Moreover, this Court finds as a matter of law that as a 95% owner of Meadowlake Ltd., which was the owner of Rafters Bar & Grill, Defendant had a direct financial interest in the Establishment.

Finally, Defendant contends that Rafters Bar & Grill lost money during the years in question, and that he has received no pay from the Establishment. Interrogatories, Nos. 3,5. In *Major Bob Music v. Stubbs*, 851 F. Supp. 475, 480 (S.D. Ga. 1994), the Court found that, regardless of whether the alleged infringer actually profited from the performance itself, it is well established that "a profit-making enterprise which publically performs copyrighted musical compositions is deemed to do so for profit." *Major Bob Music*, 851 F. Supp. at 480. See also, *U.S. Songs, Inc. v. Downside*

9

*Lenox, Inc.*, 771 F. Supp. 1220, 1226 (ND. Ga. 1991) (quoting *Gnossos Music v. DiPompo*, 13 U.S.P.Q.2d 1539, 1540, 1989 WL 154358 (D. Me. 1989)). The Court stated, "Furthermore, such an enterprise is considered to be profit-making even if it never actually yields a profit." *Major Bob Music*, 851 F. Supp. at 480 (quoting *U.S. Songs,* 771 F. Supp. at 1226; *Bourne Co. v. Speeks*, 670 F. Supp. 777, 779 (E.D. Tenn. 1987) (citing *Herbert v. Shanley Co.*, 242 U.S. 591, 595, 37 S.Ct. 232, 233, 61 L.Ed. 511 (1917) (J. Holmes) ("Whether [music] pays or not the purpose of employing it is profit and that is enough").

There is nothing in the record that suggests that Rafters Bar & Grill played music for a purpose other than making a profit. When this is the case, it does not matter whether or not the business is actually turning a profit. In *Broadcast Music, Inc.v. McDade & Sons*, 2013 WL 840133 (D. Arizona), the Court held, "The fact that the defendants were unsuccessful in their operation is not relevant." *Id.* at at *9 (quoting *Criterion Music Corp. v. Biggy's Inc.*, 701 F. Supp. 802, 804 (D. Kan. 1988). Accordingly, the fact the Defendant did not derive any income from Rafters Bar & Grill is not relevant to the determination of his liability for copyright infringement.

In summary, a person who owns the vast majority share of a profit-making establishment is not shielded from liability for copyright infringement because he is not the sole owner or because he has placed someone else in charge of his business. In the case at bar, Defendant owns 95% of the company controlling Rafters Bar & Grill, and precedent is clear that a direct financial interest makes an owner liable for copyright infringement at his establishment. District courts in the Sixth Circuit have found owners liable for copyright infringement when they owned far less than 95% of the infringing company. Next, the fact that Defendant was not the day-to-day manager, was not present at the time of the alleged infringement, and did not personally contract with the bands that performed

is irrelevant under the Copyright Act. It is clear that the mere right and ability to supervise establishes liability. Finally, Defendant's claim that he received no payment from Rafters Bar & Grill is similarly irrelevant because an establishment of the nature of Rafters Bar & Grill is certainly a "profit-making enterprise." Accordingly, Plaintiffs are entitled to summary judgment on the Copyright Act claims as a matter of law.

## II. INJUNCTIVE RELIEF, DAMAGES, AND ATTORNEY'S FEES

### A. INJUNCTIVE RELIEF

In addition to summary judgment on liability, Plaintiffs also request injunctive relief, statutory damages, and attorney's fees in their motion.  17 U.S.C. §502(a) provides that the Court may grant final injunctions "to prevent or restrain infringement of a copyright." The Northern District of Illinois observed:

> A permanent injunction is especially appropriate where a threat of continuing infringement exists… The threat of continuing infringement is substantial in the present case. Niro's provided unauthorized performances of copyrighted musical compositions on its premises after receiving oral and written notices of infringement and demands to stop such infringement from BMI. This behavior indicates a willful disregard of copyrights held by BMI and should be permanently enjoined.

*Broadcast Music, Inc. v. Niro's Palace, Inc.,* 619 F. Supp. 958, 963 (N.D. Ill. 1985). In the case at bar, like *Niro's*, Defendant made no effort to obtain a license and willfully disregarded oral and written requests by Plaintiffs to cease performing their copyrighted materials.

While it is true that Meadowlake Ltd. has declared bankruptcy, it is unclear whether Rafters Bar and Grill is still operational at any level. Because there is a strong possibility that copyright infringement may occur in the future and because the Defendant has shown a high level of disregard for Plaintiffs' rights in the past, injunctive relief in this case is appropriate.

### B. STATUTORY DAMAGES

The Copyright Act empowers a plaintiff to receive an award of statutory damages "in a sum of not less that $750.00 or more than $30,000.00" per infringement in lieu of an award representing the Plaintiffs' actual damages and the Defendant(s)' profits. 17 U.S.C. § 504(c)(1). Furthermore, "in a case where the copyright owner sustains the burden of proving… that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000.00." 17 U.S.C. § 504(c)(2).

For the nine acts of infringement described in the Complaint, the Plaintiffs request a total award of $10,800.00. This constitutes an award of $1,200.00 for each of the nine infringements. Courts have held that a statutory damage award of three times the amount of the licensing fees is appropriate under 17 U.S.C. § 504(c). *Chi-Boy Music v. Charlie Club, Inc.,* 930 F.2d 1224, 1229-30 (7th Cir. 1991). The statutory awards requested are twice the cost of the licensing fees, and are at the lower end of the statutory range. Therefore, the Plaintiffs' request for statutory damages is appropriate.

### C. ATTORNEY'S FEES AND COSTS

Title 17 U.S.C. § 505 provides:

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

The Copyright Act permits an award of "reasonable attorney's fees to the prevailing party" in a copyright infringement case. 17 U.S.C. § 505; *Balsley v. LFP*, 691 F.3d 747 (6th Cir. 2012); Fed.R.Civ.P. 54(d)(2)(B)(ii). "The grant of fees and costs 'is the rule rather than the exception and they should be awarded routinely.'" *Id.* (citing *Bridgeport Music Inc. v. WB Music Corp. (WB Music*

12

*II)*, 520 F.3d 588, 592 (6th Cir. 2008)). The decision to grant attorney's fees remains within the trial court's discretion. 17 U.S.C. § 505; *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994).

In determining whether a plaintiff is entitles to attorney's fees, the Court considers several nonexclusive factors, referred to as the "*Fogerty* factors," which are: "frivolousness, motivation, objective unreasonableness (factual and length), and the need to advance considerations of compensation and deterrence." *Jones v. Blidge*, 558 F.3d 485, 494 (6th Cir. 2009) (citation omitted).

In the present case, Defendant intentionally and repeatedly ignored his obligations under the Copyright Act and has forced Plaintiffs to engage in litigation. Accordingly, Plaintiffs should be awarded full attorney's fees. There are no factors that militate against an award of Plaintiffs' costs in the case at bar.

According to the Declaration of Ronald Isroff, the attorney who represented Plaintiffs in this action, and has filed numerous copyright infringement actions on behalf of BMI in the past, Plaintiffs have accrued attorney's fees in the amount $16,965.80 and expenses in the amount of $350.00, for a total of $17,351.80. In *Broadcast Music, Inc., v. Leyland Co., LLC*, *supra*, this Court found that $350.00 per hour was a reasonable fee for Attorney Isroff. In the present case, Attorney Isroff has billed Plaintiffs at a rate of $313.00 per hour. This sum is reasonable for the services provided. Finally, the Isroff Declaration lists $350.00 in costs. Therefore, the Court awards $17,315.80 in attorney's fees and costs in this case.

### III.    CONCLUSION

For the above reasons, Plaintiffs' motion for summary judgment, Dkt. #47, is GRANTED,

Defendant's motion to deny Plaintiff's motion for summary judgment and Defendant's motion to dismiss the above captioned case, Dkt. #50, is DENIED.

IT IS HEREBY ORDERED that judgment is GRANTED against Defendant as follows:

(1) Defendant is permanently enjoined from further acts of infringement;

(2) Plaintiffs are awarded judgment for statutory damages in the amount of $10,800.00, plus interest from this date;

(3) Plaintiffs are awarded costs and attorney's fees in the amount of $17,315.80.

**IT IS SO ORDERED.**

Dated: July 29, 2013  /s/ *George J. Limbert*
**GEORGE J. LIMBERT**
**UNITED STATES MAGISTRATE JUDGE**